UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN RENTFRO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:13CV1425 JCH |
| ) | |
| JEFF NORMAN, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Kevin Rentfro's first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On January 26, 2001, a jury in the Circuit Court of St. Charles County, Missouri, found Petitioner guilty of one count of murder in the second degree, and one count of armed criminal action.  On May 21, 2001, Petitioner was sentenced to concurrent terms of life imprisonment.  The Missouri Court of Appeals affirmed the convictions and sentence.  *State v. Rentfro*, 83 S.W.3d 28 (Mo. App. 2002).

Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on December 19, 2002.  Previously retained counsel Arthur Margulis filed an amended motion for post-conviction relief on February 14, 2003, and a second amended motion on July 11, 2003.  Petitioner's action then languished on the St. Charles Circuit Court's docket for over eight years, during which time the court placed the case on a dismissal docket on three separate occasions due to Mr. Margulis' failure to prosecute the case.

On July 21, 2011, a conference was held at the request of Mr. Margulis and the attorney for the State.  At that time, the court found Petitioner's second amended motion was untimely filed.  The court then set an evidentiary hearing for July 26, 2011, and noted that upon motion of the Petitioner

- 1 -

(through his attorney), with the consent of the State, the sole issue to be heard at the evidentiary hearing was the alleged failure of Petitioner's trial counsel to discover and appropriately pursue distortions, omissions, and misrepresentations made by the State's expert witness, Rodney Englert, as to his qualifications.[1]

The evidentiary hearing was conducted as scheduled on July 26, 2011, before Judge Ted House.[2]  On August 9, 2011, Judge House issued findings of fact and conclusions of law, and a judgment denying Petitioner's motion for post-conviction relief.  Judge House *sua sponte* issued new findings and conclusions, and an amended judgment, on August 17, 2011.

On September 6, 2011, Petitioner's current counsel, Mr. Kent Gipson, entered his appearance on Petitioner's behalf.  On September 15, 2011, Mr. Gipson filed a motion for a new trial pursuant to Missouri Supreme Court Rule 78.  After Judge House failed to rule on the motion within ninety days, Petitioner filed a timely notice of appeal on December 14, 2011.  On November 27, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief in a *per curiam* unpublished opinion.  *Rentfro v. State*, 391 S.W.3d 30 (Mo. App. 2012).[3]

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri.  In the instant petition for writ of habeas corpus, Petitioner raises the following five claims for relief:

> (1)  That trial counsel was ineffective in failing to investigate and present available evidence to attack the credibility and credentials of the prosecution's blood spatter expert, Rodney Englert;

---

[1] During the prehearing conference, Mr. Margulis agreed to waive all of Petitioner's claims for post-conviction relief other than the ineffectiveness claim involving Mr. Englert's qualifications as an expert.  There is no indication in the record that Petitioner knew of the proposed waiver, however, much less agreed with it.
[2] Petitioner was not present for the evidentiary hearing, and the record reveals no explanation for his absence.
[3] Petitioner raised two grounds in his post-conviction appeal:  that the motion court erred in precluding attorney Donald Rehkopf from testifying regarding Mr. Englert's qualifications as an expert, and that the motion court erred in denying his motion for new trial because petitioner was abandoned by his post-conviction counsel.  The Missouri Court of Appeals declined to address Petitioner's second point, however, finding that it was more properly characterized as a claim for ineffective assistance of post-conviction counsel, and as such was "categorically unreviewable."

(2) That trial counsel was ineffective in failing to investigate and present available evidence and expert testimony to establish that the absence of gunshot residue on the victim's left hand and the presence of a trace amount of barium on Petitioner's left hand was not inconsistent with Petitioner's theory of defense that the victim committed suicide;

(3) That trial counsel was ineffective in failing to investigate and present available evidence of the victim's mental health problems and her prior suicide attempt;

(4) That trial counsel was ineffective in failing to investigate and present available evidence and expert testimony to contradict the testimony of medical examiner Mary Case that persons with a blood-alcohol content (BAC) of .399 would likely be unconscious or dead; and

(5) That Petitioner's convictions were secured in violation of the Fourteenth Amendment due to the prosecutor's improper closing argument expressing his personal opinions of Petitioner's guilt based upon facts not in evidence.

## **DISCUSSION**

As stated above, in Ground 2 of his petition Petitioner asserts trial counsel was ineffective in failing to investigate and present available evidence and expert testimony to establish that the absence of gunshot residue on the victim's left hand and the presence of a trace amount of barium on Petitioner's left hand was not inconsistent with Petitioner's theory of defense that the victim committed suicide.  In Ground 3, Petitioner asserts trial counsel was ineffective in failing to investigate and present available evidence of the victim's mental health problems and her prior suicide attempt.  In Ground 4, Petitioner asserts trial counsel was ineffective in failing to investigate and present available evidence and expert testimony to contradict the testimony of medical examiner Mary Case that persons with a blood-alcohol content of .399 would likely be unconscious or dead.

In response, Respondent claims Petitioner's claims are procedurally defaulted, because although he presented them in both his Rule 29.15 motion and amended motion, he waived the

claims by voluntarily choosing not to proceed with them at the Rule 29.15 hearing.[4] Petitioner may overcome the procedural bar by demonstrating "'cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *McLaughlin v. Steele*, 2016 WL 1106884, at *6 (E.D. Mo. Mar. 22, 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

    A.    <u>**Cause**</u>

"'Cause' must be 'something *external* to the petitioner, something that cannot fairly be attributed to him.'" *McLaughlin*, 2016 WL 1106884, at *6 (quoting *Coleman*, 501 U.S. at 753 (emphasis in original)).

> The Supreme Court qualified this definition in *Martinez v. Ryan*, 132 S.Ct. [1309, 1320 (2012)]. In that case, the Court held for the first time that a petitioner can establish cause by demonstrating that his initial-review postconviction counsel was constitutionally ineffective for failing to raise a "substantial" claim of ineffective trial counsel.

*Id. See also Martinez*, 132 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

In Missouri, claims for ineffective assistance of counsel may not be raised until post-conviction proceedings. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citation omitted) ("Missouri law does not allow a claim for ineffective assistance of counsel to be raised on direct appeal."); *see also* Mo.Sup.Ct. Rule 29.15(a). *Martinez* thus applies in Missouri, and so to establish cause to overcome his procedural default Petitioner must show "(1) that post-conviction

---

4 As noted above, it is unclear whether Petitioner was aware of Mr. Margulis' decision to waive the claims.

counsel was 'ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984),' and (2) 'that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.[5]'" *Graves v. Cassady*, 2015 WL 5560356, at *8 (E.D. Mo. Sep. 21, 2015) (quoting *Martinez*, 132 S.Ct. at 1318).  *See also Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014).

This Court held an evidentiary hearing on May 17, 2016, in order to determine whether Mr. Margulis' waiver of Petitioner's claims of ineffective assistance of trial counsel constitutes cause sufficient to overcome Petitioner's procedural default.  At the hearing, Mr. Margulis testified that he was hired in June of 2001, to pursue any instances of ineffective assistance of counsel on the part of Petitioner's trial attorney. (Evidentiary Hearing Transcript, PP. 5, 7).  He stated the first thing he did after being hired was go to Jefferson City, to meet with Petitioner.  (*Id.*, P. 7).[6]  On August 31, 2001, he sent a letter to Professor Herb MacDonell, a highly-regarded expert on blood spatter, seeking his expert assistance on the case.  (*Id.*, P. 8).  Mr. Margulis testified that he did not recall ever hearing back from Professor MacDonell, however, nor did he remember engaging in any follow-up on the correspondence.  (*Id.*, P. 9).  When asked whether he could explain why, when the second amended motion was filed on July 11, 2003, an evidentiary hearing was not held until 2011, Mr. Margulis simply responded "No."  (*Id.*, PP. 11-12).

Petitioner's attorney pointed out that at the pretrial conference held on July 21, 2011, Mr. Margulis agreed to waive all claims except the one dealing with Mr. Englert's credentials and

---

5 "Substantial" means "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *McLaughlin*, 2016 WL 1106884, at *6 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029 (2003)).  Respondent does not dispute that the underlying ineffective assistance of trial counsel claims are substantial, and upon consideration the Court finds they are.

6 At one point Mr. Margulis began to testify that he met with Petitioner more than once during the course of his representation, but then backtracked as follows: "I thought I met with [Petitioner]—Of course, I'm under oath. I thought I met with him more than once.  I thought I met with him at least twice.  If he says that's not true, then I would accept that." (Evidentiary Hearing Transcript, P. 38).

qualifications. (Evidentiary Hearing Transcript, P. 12). When asked what he gained by doing this, Mr. Margulis responded as follows:

> My interpretation of the case was that the entire case—and it's been recited over again in a number of pleadings by all parties—was a battle of the experts. And all about the blood splatters and everything else, in my opinion, after reviewing all of the other allegations, took on virtually a meaningless import. And so consequently, I thought the real heart of the case on post-conviction—on post-conviction relief was experts and blood splatter.

(*Id.*, PP. 12-13).[7]

Mr. Gipson proceeded to seek Mr. Margulis' impression of the importance of the abandoned claims, albeit unsuccessfully. For example, with respect to the gunshot residue evidence, the following exchanges took place:

> Q (by Mr. Gipson)     Do you recall also that gunshot residue evidence was an important issue in the case as well?
>
> A (by Mr. Margulis)   It was involved in the case, yes.
>
> Q     And there was a claim raised in the first amended timely motion that trial counsel was ineffective in not presenting evidence to neutralize the—any incriminating inferences that the prosecution raised. Do you recall that?
>
> A     Well, I recall all of it now because I read—I've read that very recently.
>
> Q     And you would agree that—that that evidence that the prosecution presented at trial was damaging to the defense, was it not?
>
> A     I don't know.
>
> Q     Well,--
>
> A     I don't know what resonated with the jury….

---

7 Mr. Margulis made this representation despite the fact that in the amended motion to vacate that he filed, he acknowledged the State relied on four arguments at trial, including the fact that Ms. Rentfro's BAC made it unlikely she was conscious at the time of her death; the fact that that gunshot residue found on Petitioner's hand was consistent with someone who had fired a weapon and then washed his hands; and the fact that the lack of significant levels of gunshot residue on Ms. Rentfro's hand made it unlikely that she was the shooter.

> Q	And regarding the gunshot residue, were you aware that that Glock handgun had an ejection port on the right side and that could have explained why there was no gunshot residue on her hand?....
>
> A	Yes.
>
> Q	And don't you think that would have—assuming she—the theory of defense was she shot herself with her left hand holding the gun as the contact wound, so the gunshot residue, most of it, there wouldn't have been any coming out of the barrel because it was a contact wound. Is that right?
>
> A	I don't know.
>
> Q	Well, you've done a lot of cases. You're familiar with contact wounds, aren't you?
>
> A	Well, are you asking me those kinds of questions or are you asking me about what impact it might have had on a jury? I'm not sure where you're going here.
>
> Q	Well, you didn't—you didn't present any of that evidence because you abandoned that claim. Is that right?
>
> A	That's correct.

(Evidentiary Hearing Transcript, PP. 13, 42-43). With respect to evidence regarding the victim's mental health problems and her prior suicide attempt, the following exchanges took place:

> Q	And there was also an issue about—raised in your first amended motion that trial counsel was ineffective in not putting on evidence that the victim, Sherri Rentfro, who was married to my client, had tried to commit suicide once before and had mental problems. Do you recall that?
>
> A	I recall that, yes.
>
> Q	And that was one of the issues that you abandoned right before the hearing. Is that correct?
>
> A	I didn't think it was right before the hearing. I thought it was sometime before, but the answer is, yes, you're right.
>
> Q	And you would agree, would you not, if the defense in the case was that the victim committed suicide, that a prior unsuccessful suicide attempt would be helpful to the defense, would it not?
>
> A	I don't know that….

˘- 7 -˘

Q       The defense in this case was that Ms. Rentfro inflicted the wound upon herself. It was a suicide defense, right? Isn't that correct?....

A       Well, that was one of the defenses, yes.

Q       And so do you think it would have been distracting to put on—

A       I didn't use it.[8]

Q       Well, that's what—You think it's an insignificant issue that trial counsel did not put on evidence of a prior failed suicide attempt.

A       Well, I think under the—under all the circumstances, that's correct.

Q       That would have helped his defense, obviously, wouldn't it?....That evidence would have helped his defense at trial.

A       I think that's speculation.

Q       So you're saying in a trial where the defense is the victim committed suicide, that a prior unsuccessful suicide attempt by the victim is—wouldn't help the defense? Are you serious?

[State's attorney Mr. Stephen Hawke]        The question is badgering, Your Honor.

[The Court]     Why don't you restate your question.

Q       Are you saying that that evidence of a prior suicide attempt in this case would have not helped the defense? Is that what you're saying?

A       What I'm saying is that I thought the focus of the trial—not the focus—well, the focus of the whole exercise was blood splattering, spattering and qualifications of an expert.

Q       But you would agree that that evidence of a prior suicide attempt would be relevant and helpful to the defense, would it not?

A       I think you're speculating.

---

8 Although he denies it, Mr. Margulis did testify on cross examination that he believed the other allegations (other than the claim regarding Mr. Englert's qualifications and the blood spatter) were "essentially meritless" and "distracting." (Evidentiary Hearing Transcript, P. 36).

˘- 8 -˘

(*Id.*, PP. 14, 39-40).  With respect to the issue of whether evidence and expert testimony should have been offered to contradict the testimony of medical examiner Mary Case that persons with a BAC of .399 would likely be unconscious or dead, the following exchanges took place:

> Q      And an important issue in the trial was the prosecutor argued that someone with that high of a BAC could not function and would likely be unconscious or dead.  Do you recall that?
>
> A      Yes.
>
> Q      And do you recall Mr. Rentfro and—telling you and you raised a claim regarding this that Ms. Sherri Rentfro was a heavy drinker and had a high tolerance for alcohol?  Do you recall that?....Do you recall being told, as you reflected in your first amended motion, that trial counsel was told and an ineffectiveness claim was raised that he should have done more to counter the prosecution's argument that Mrs. Rentfro would be unconscious with that high of a BAC?  Do you recall that?....
>
> A      I recall something like that…..
>
> Q      You—You waived presenting any evidence or that claim right before the evidentiary hearing on the 29.15.
>
> A.      Yes….
>
> Q      Now let's talk about the blood alcohol evidence.  The trial record will reflect this, and I assume that at one time you read the trial transcript.  But the prosecutor made a great deal of hay about—out of the fact that the medical examiner, although she couldn't conclusively say this, that with that high of a BAC, it's very likely that Mrs. Rentfro would have been either unconscious or dead.  Do you recall that—
>
> A      Yes.
>
> Q      --from the trial?
>
> A      Yes.
>
> Q      Don't you think that hurt the defense or the theory of defense that she shot herself?  Obviously, she couldn't do that if she was unconscious or already dead.  Is that right?
>
> A      Yes.
>
> Q      So how—Wouldn't it have been significant and wouldn't it have helped the defense at trial to put on evidence that Mrs. Rentfro had a high tolerance for alcohol

and, therefore, could have still shot herself despite the high BAC?  That would have been helpful, would it not?

A      You're dealing in speculation when you start talking about what would be helpful and what wouldn't and what constituted strategy in proceeding.

Q      Well, that's—that's what this is—that's what post-conviction review is all about.  You put on facts, and then the judge makes a probabilistic determination about whether it could have affected the outcome of the trial.  So that's not your call, is it?  Your job, as a post-conviction lawyer, is to put on the evidence, and then let the reviewing courts assess that evidence under the proper legal standard.  And you didn't do that.  Is that right?....

A      I didn't do that.

(*Id.*, PP. 14-16, 40-42).  Finally, while Mr. Margulis testified that another attorney in his office, Mr. Henry Miller, "did a considerable amount of investigation" into Petitioner's matter, so that "it didn't lie dormant, although the sequence of dates would seem to appear that way," he acknowledged he did not retain any experts (other than Mr. Rehkopf, retained in connection with the claim regarding Mr. Englert's qualifications) to testify on any of the ineffectiveness claims.  (*Id.*, P. 26).

"Not all mistakes by post-conviction counsel have constitutional significance." *McLaughlin*, 2016 WL 1106884, at *8.  Here, however, testimony from Mr. Margulis himself demonstrates that his performance fell below prevailing professional norms.  *Id.*  In other words, had Mr. Margulis proffered any reasonable justification for delaying Petitioner's proceeding and then abandoning the majority of his claims, this Court would have applied the "strong presumption" that his decision was reasonable.  *Id.* (citing *Strickland*, 466 U.S. at 689).  Instead, Mr. Margulis gave no explanation whatsoever for the eight and one-half year delay between the filing of Petitioner's amended petition and the eventual evidentiary hearing thereon.  Furthermore, the Court finds his rationale for abandoning the three claims, i.e., that whether any evidence offered in support of the claims would have been relevant and/or helpful to the defense was speculation, to be unpersuasive.  Instead, the Court agrees with Petitioner that the omitted evidence potentially was extremely significant, and

thus the decision whether trial counsel was ineffective for failing to offer the evidence should have been left to the state court judge after full briefing and competent advocacy on Mr. Margulis' part. Under these circumstances, the Court finds that Mr. Margulis' deficient performance establishes cause for the default of Petitioner's claims under *Martinez*.

### B.     Prejudice

Having found that the underlying claims were "substantial," and that Mr. Margulis' abandonment of them establishes "cause" for the procedural default, the Court must determine whether post-conviction counsel's deficient performance caused Petitioner "actual prejudice." *McLaughlin*, 2016 WL 1106884, at *9 (citing *Coleman*, 501 U.S. at 750).

> As other district courts have noted, *Coleman/Martinez* prejudice and *Strickland* prejudice may technically be two separate inquiries, but they overlap. They are—under some circumstances—redundant. At least in this case—where postconviction counsel's deficiency was his complete failure to present a substantial claim—the two types of prejudice are inexorably related: if there is a reasonable probability that the [proceeding] would have gone differently had trial counsel been constitutionally adequate, there is necessarily a reasonable probability that the state court would have so found had postconviction counsel properly presented that underlying claim.

*Id.* (citations and footnote omitted).

Upon consideration of the foregoing, the Court finds that in order to determine whether Mr. Margulis' failings caused Petitioner prejudice, it must address the underlying claims in Petitioner's amended petition. *See Martinez*, 132 S.Ct. at 1320 ("A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted.").[9]

### CONCLUSION

---

[9] In his response, Respondent also asserts Ground 1 of Petitioner's petition is procedurally defaulted. Assuming without deciding this to be the case, the Court again finds cause exists to excuse the procedural default. Specifically, in light of Mr. Margulis' failure properly to advocate for the claim during the evidentiary hearing (despite having flown Mr. Rehkopf in from New York to testify), and especially in light of his failure to make an offer of proof, the Court finds his performance was constitutionally deficient.

Accordingly,

**IT IS HEREBY ORDERED** that the Court will hold an evidentiary hearing, in order to determine the facts relating to all Plaintiff's claims in his First Amended Petition for Writ of Habeas Corpus (ECF No. 8).

**IT IS FURTHER ORDERED** that the presence and participation of Kevin Rentfro are required for the evidentiary hearing, which will be held before this Court on **Monday, July 18, 2016**, at **10:00 a.m.** in the courtroom of the undersigned.

**IT IS FURTHER ORDERED** that the presence and participation of attorney Neil Bruntrager are required for the evidentiary hearing.

**IT IS FURTHER ORDERED** that the claims in Petitioner's First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 8) are **HELD IN ABEYANCE**, pending the outcome of the scheduled evidentiary hearing.

Dated this     20th     Day of May, 2016.

\s\    Jean C. Hamilton
UNITED STATES DISTRICT JUDGE