## IN THE UNITED STATES DISTRICT
## EASTERN DISTRICT OF MISSOURI

KEVIN RENTFRO,                         )
                                       )
               Petitioner,         )
                                       )
v.                                     )            **Case No. 4:13-CV-01425**
                                       )
JAY CASSADY,                           )
                                       )
               Respondent.         )

## PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT
## PURSUANT TO RULE 59(e)

COMES now petitioner, Kevin Rentfro, and hereby moves this Court, pursuant to Fed. R. Civ. P. 59(e), to alter or amend its order and judgment issued September 9, 2016 denying petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254.   In support of this motion, petitioner respectfully states the following grounds:

## I.

## INTRODUCTION AND STANDARD OF REVIEW

A material mistake of law or fact allows the district court, in its discretion, to alter or amend its judgment.  *See, e.g.*, *Deutsch v. Burlington Northern Railway Co.*, 983 F.2d 741, 744 (7th Cir. 1992), *Bannister v. Armontrout*, 807 F. Supp. 516, 556 (W.D. Mo. 1991).  A district court's failure to notice or consider arguments or authorities that justify relief also constitutes an appropriate ground to grant a Rule

59(e) motion, if these failures affected the correctness of the court's decision, *Hicks v. Town of Hudson*, 390 F.2d 84, 87-88 (10th Cir. 1967).  Finally, 59(e) relief is appropriate to consider evidence or information that was not available to the court when it issued its decision, or in order to prevent manifest injustice.  *See, e.g.*, *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3rd Cir. 1999).  Most of the settled grounds for granting a Rule 59(e) motion are present here.

## II.

## <u>REASONS THE MOTION SHOULD BE GRANTED</u>

Petitioner's multiple claims of ineffective assistance of trial counsel involving trial counsel's failure to adequately rebut and discredit the expert testimony presented by the prosecution that convinced the jury that petitioner shot his wife while she was passed out drunk on a bed were deemed sufficiently substantial by this Court to warrant two days of evidentiary hearings earlier this year.  Despite uncontradicted evidence that established that trial counsel failed to investigate and present available evidence that would have discredited the state's expert witnesses and supported the defense that Mrs. Rentfro committed suicide, this Court's order and judgment of September 9, 2016 denied petitioner habeas relief on these ineffectiveness claims and further denied petitioner a certificate of appealability (COA) to allow him to challenge this Court's decision on appeal. (Doc. 73).

In reaching this conclusion, the court did not address the issue of *Strickland* prejudice on any of petitioner's ineffectiveness claims.  (*Id*.).  Instead, the court found that petitioner could not establish that trial counsel's performance was deficient under the familiar test of *Strickland v. Washington*, 466 U.S. 668 (1984).

For the following reasons this Court should reconsider this order and judgment and issue a new superseding order and judgment granting habeas relief on Claims 1, 2, and 4 raised in the amended petition because this Court's order overlooked several material issues of law and fact that affected the correctness of the outcome.  At a minimum, a COA should issue because a different court could reach the opposite conclusion based on the facts presented here and the prevailing law.

## A.     The Englert Claim – Claim 1

In addressing this claim, the court, after extensively quoting portions of the opinions of both the 29.15 motion court and the Missouri Court of Appeals, concluded that petitioner failed to establish that trial counsel's performance was deficient in light of Mr. Bruntrager's recent testimony at the July 18, 2016 evidentiary hearing.  (Doc. 73, pp. 4-9).  The court, thereafter, concluded that the state courts' decisions were reasonable under the standard of review provisions of 28 U.S.C. § 2254(d).  (*Id*. at 9).

The court clearly erred as a matter of law in reviewing this claim under the lens of 2254(d).  As noted in the traverse, 2254(d) does not apply and *de novo* review is required because the state court adjudication of the Englert claim was based upon an unreasonable determination of the facts under 2254(d)(2) because petitioner did not receive a full and fair hearing due to the ineffectiveness of Mr. Margulis.[1]  *See, e.g.*, *Brumfield v. Cain*, 135 S. Ct. 2269, 2281-2282 (2015).  In *Brumfield*, the court did not require the petitioner to prove that the state court's conclusion (that Brumfield was not intellectually disabled) was unreasonable – instead, the procedure that the court used to make that determination led it to being deemed an unreasonable factual determination for purposes of 2254(d)(2).  *Id.*; *See also* Wiseman, *Habeas After Pinholster*, 53 B.C.L. REV. 953, 984-986 (noting flawed fact-finding process permits *de novo* review under 2254(d)(2)).

As petitioner pointed out in his traverse and as this Court found in its prior order finding cause and prejudice under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the state court adjudication of the Englert claim was tainted and not entitled to any deference due to a deficient record resulting from the ineffectiveness of state post-conviction counsel Arthur Margulis.  (See Doc. 47, p. 11, n.9)  This issue was also previously addressed and resolved by this Court's denial of respondent's motion

---

[1] In addition to abandoning significant aspects of Claim 1 and Claims 2, 3, and 4, petitioner also contended that Mr. Margulis was ineffective in his abbreviated examinations of Mr. Bruntrager and Mr. Rehkopf at the 29.15 hearing.

for reconsideration of this Court's previous order finding cause and prejudice under *Martinez* and granting an evidentiary hearing on the merits of petitioner's *Strickland* claims.  (*See* Docs. 47, 50, 58, 59).

It is also clear that the claim currently before the Court under Claim 1 is not the same claim that Mr. Margulis abandoned, in large part, at the 29.15 hearing due to his ineffectiveness.  As the 29.15 record clearly demonstrates, Mr. Margulis abandoned all aspects of this ineffectiveness claim other than a challenge to Englert's credentials.  Margulis was also ineffective in not presenting available evidence in support of this claim, as this Court has previously found.  (Doc. 47, p.11, n.9).  Therefore, this Court is free to review the merits of this claim *de novo* under *Brumfield v. Cain*, 135 S. Ct. 2269, 2281-2282 (2015) and *Dickens v. Ryan*, 740 F.3d 1302, 1318-1320 (9th Cir. en banc 2014).

The court's consideration of Mr. Bruntrager's testimony from the July evidentiary hearing to uphold the Missouri decisions as reasonable under 2254(d) also conflicts with the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).  *Pinholster* clearly holds that evidence introduced in federal court cannot be considered in conducting a 2254(d) analysis.  *Id*. at 1400.  As petitioner has pointed out repeatedly in prior pleadings, reviewing courts have held that *Martinez* carves out an exception to the other aspect of the *Pinholster* decision that limits a federal court's power to hold a hearing on a claim previously considered

on the merits in state court.  (Doc. 58).  As a result, where cause and prejudice is found due to post-conviction counsel's ineffectiveness in failing to litigate the claim, *de novo* review is appropriate because the claim later developed in federal court is not the same claim that was previously advanced before the 29.15 motion court.  In fact, Mr. Margulis abandoned all aspects of the claim except for a small component of the current Claim 1 involving trial counsel's failure to challenge Mr. Englert's credentials.  Mr. Margulis incompetently abandoned all other aspects of the current Claim 1 involving the improper use of luminol, Englert's prior inconsistent statements, and the blood flow patterns shown on petitioner's Exhibit 6.  Because the claim currently before the court is different than the claim addressed by the 29.15 motion court, *de novo* review is required.  Reconsideration is warranted so that this Court can examine all aspects of this claim, in light of all of the evidence, *de novo*.

    In finding Mr. Bruntrager's performance was not deficient, the court found that his trial strategy of relying solely upon his own expert, Paul Kish, to discredit Mr. Englert's testimony was a reasonable.  (Doc. 73, pp. 7-9).  However, this finding is erroneous because the court overlooked the fact that Mr. Bruntrager admitted in the evidentiary hearing and in his deposition during the 29.15 proceeding that he did not investigate Mr. Englert's educational background or credentials after receiving his CV.  (See Pet. Exh. 1, Bruntrager depo., attached to

Traverse at pp. 18-21).  Mr. Bruntrager also had no excuse for failing to contact other attorneys that had experience with Mr. Englert to obtain prior inconsistent testimony to impeach him regarding whether aspirated blood could cause the same misting effect that Englert insisted at trial could only have been caused by a gunshot wound.

Mr. Bruntrager also remembered receiving some transcripts, depositions, and other materials from lawyers in Utah, Florida, and North Carolina.  Although he could not specifically identify the documents introduced into evidence at the July 18 hearing as petitioner's Exhibits 11 and 12, or whether these were the documents he had obtained prior to trial, he did recall the name of Mr. Ronald Yengich, the Utah attorney whose case involving Englert was noted in some of these materials.  (*Id*.).

Mr. Bruntrager also did not recall whether he specifically saw the documents and correspondence provided to defense counsel and others from Professor MacDonell specifying reasons why he had a low opinion of Mr. Englert's integrity and credibility.  (See Exh 11).  However, Mr. Bruntrager did remember that he had heard Mr. Englert being described as a "snake oil salesman" by many persons who had experience with Mr. Englert in past cases.

Mr. Bruntrager also recalled taking two separate depositions of Mr. Englert prior to trial, both of which were introduced into evidence at the July hearing.  (See

Exh.'s 9, 10).  On the critical issue of whether the blood stains found on Mr. Rentfro's shirt could have been caused by aspirated blood instead of high velocity impact spatter ("HVIS") from a gunshot wound, Mr. Bruntrager admitted that there was a prior inconsistent statement from one of the Englert depositions that could have been used to impeach Englert's trial testimony that the blood spatter he examined could have only been caused by a gunshot wound.  (See Pet. Exh. 10, p. 35).  Mr. Bruntrager also did not utilize any other prior inconsistent statements from Englert's testimony at prior trials to impeach Englert on this critical question.  (See Exh. 12).

Mr. Bruntrager's testimony that, based on his knowledge of Englert, his tactic at trial was to not extensively cross-examine him because doing so could potentially do more harm than good, is objectively unreasonable because it was based upon an inadequate investigation.  "[T]he traditional deference owed to the strategic judgments of counsel is not justified where there was not an adequate investigation supporting those judgments…An uninformed strategy is not a reasoned strategy."  *Correll v. Ryan*, 539 F.3d 938, 948-949 (9th Cir. 2008), quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

This Court also credited Mr. Bruntrager's testimony that he reasonably chose not to challenge Mr. Englert's qualifications as an expert in a pretrial *Frye* hearing.  Mr. Bruntrager's justification for these failures, that the trial judge had

8

indicated he was going to permit Mr. Englert to testify, cannot be deemed a reasonable tactic in light of the decision in *State v. Daniels*, 179 S.W.3d 273 (Mo. App. W.D. 2005).

In *Daniels*, Henry Daniels' murder conviction was reversed on direct appeal due to the trial court's failure to grant a *Frye* hearing regarding luminol evidence that the prosecution later misleadingly utilized to argue that blood was present at Daniels' residence and car, which supported prosecution's theory that Henry Daniels murdered his girlfriend and then disposed of the body in the Missouri river where it was never recovered.   179 S.W.3d at 280-285.   At retrial, where the luminol evidence was excluded, Mr. Daniels was acquitted.

Despite Mr. Bruntrager's knowledge that the trial judge would allow Mr. Englert to testify regardless of any challenge to his credibility, expertise, or forensic methods he employed, his failure to file a *Frye* motion and ask for a hearing constituted deficient performance because, as in *Daniels*, this act would have preserved a winning issue for direct appeal.  Mr. Bruntrager's justification for this failure also clearly does not shield him from being found ineffective in failing to conduct basic research on luminol and attack Mr. Englert's methods and improper use of luminol through cross-examination and available expert testimony.

In addition to the foregoing issues, reconsideration is also warranted because this Court failed to consider and address other significant components of this

ineffectiveness claim that were proven at the July 18 evidentiary hearing through the testimony of expert witness John Cayton.  First, the court failed to address Mr. Cayton's testimony based upon the blood flow patterns depicted in the photos in petitioner's Exhibit 6, which would have discredited Englert and supported petitioner's defense of suicide at trial.  Mr. Cayton's testimony established that Mr. Bruntrager was ineffective in failing to impeach Englert with evidence previously adduced at trial and shown in photos of the body that Mrs. Rentfro's hand was moved, there was a void in the blood flow on her shoulder, and there was visible blood on her left forearm.  (29.15 L.F. 149-151; Pet. Exh. 6).

Mr. Cayton reviewed photos of Mrs. Rentfro's body and concluded that, based upon blood flow patterns, these photos supported Mr. Rentfro's trial testimony that Mrs. Rentfro shot herself in the head.  (See Pet. Exh. 6).  Based on undisputed evidence from the trial record that Mrs. Rentfro's hand was moved, (Trial Tr. 460), the void in the blood flow on Mrs. Rentfro's shoulder suggests that she shot herself and as she bled out, her bloody left forearm inhibited the blood flow, which explains the void in the flow of blood on her shoulder in the photos presented in Exhibit 6.

The court also failed to address Mr. Cayton's testimony regarding the proper and improper uses of luminol by crime scene technicians in order to detect blood. As Mr. Cayton's testimony, Mr. Rehkopf's affidavit, and other settled principles of

10

forensic science establish, it is not appropriate for a criminalist to spray luminol on visible blood stains.   (29.15 L.F. 147-148).   Luminol is instead used as a presumptive test to determine whether blood may have been deposited on a surface and either wiped off or is not visible for other reasons.  However, luminol is only a presumptive test for blood and cannot reliably demonstrate that blood is present because luminol also reacts with iron and other elements and chemicals, such as bleach, that are commonly found in the environment and in common household items. *See also Daniels*, 179 S.W.3d at 283.

Mr. Cayton testified that it was not appropriate for Mr. Englert to spray luminol on visible blood stains and thereafter utilize the glow patterns to determine the existence of blood spatter or high velocity mist because luminol is commonly sprayed out of a bottle as a mist.  Thus, it is entirely possible, if not likely, that by spraying a luminol on a visible blood stain it would make a blood stain appear to be mist when, in fact, it was not.

In light of the foregoing facts, reconsideration of this claim is necessary. Apart from the error regarding standard of review, the court overlooked and failed to address significant components of this claim regarding Englert's prior inconsistent statements, the improper use of luminol, and the blood flow patterns depicted in the photos of the deceased.  By failing to take into account these aspects of this claim and the expert testimony of John Cayton on these important

issues, the court reached the wrong result in finding that trial counsel's investigation of Englert and his trial performance was legally adequate. Furthermore, based upon prior pleadings in this matter and the weakness of the state's totally circumstantial case, petitioner also believes that *Strickland* prejudice will be established after this Court reexamines this claim *de novo*.

**B.     Claims Involving GSR And BAC (Claims 2 and 4)**

In addressing Claims 2 and 4, the court found that Mr. Bruntrager's performance was adequate because Mr. Bruntrager reasonably elected to diminish the incriminating impact of the GSR and BAC test results solely through the cross-examination of the prosecution's expert ballistics witnesses and Dr. Mary Case. (Doc. 73, pp. 9-12, 14-15).   The court's *Strickland* performance analysis is undermined and refuted by the state court record and the uncontradicted evidence presented at the July 18 hearing.

First, the court's view that Mr. Bruntrager effectively neutralized the incriminating impact of the GSR and BAC evidence is belied by the fact that in petitioner's brief in his direct appeal, his first three claims of error argued that the trial court erred in admitting testimony regarding the GSR tests on both Mr. and Mrs. Rentfro's hands and in allowing Dr. Case to testify that a person with a .399 BAC would likely be unconscious.  In all three of these points of error, appellate counsel for petitioner contended that the admission of the testimony regarding the

GSR testing and high BAC levels were "unreasonably prejudicial" and were "calculated" and "likely to mislead and confuse the jury." (App. Br. at pp. 17-19).

The court also failed to take into account the obvious impact of the state's closing argument in influencing the jury to convict based upon Mrs. Rentfro's extremely high BAC and the absence of GSR on her hands and the presence of barium on one of petitioner's hands. (Tr. Vol. III, 66-67). The prosecution's argument to the jury regarding Mr. Rentfro's BAC was particularly devastating to the defense.

The prosecution forcefully argued to the jury that based on Mary Case's testimony, that most people who have a BAC of 0.35 or higher are either passed out or dead. (*Id.* 21-22, 64-65). As a result, the prosecution contended that this evidence supported its theory that petitioner put the gun to his wife's head and shot her after she had passed out on the bed. (*Id.*).

In addressing the GSR issue, the court also unreasonably discounted a critical fact establishing trial counsel's ineffectiveness that was demonstrated during John Cayton's testimony at the July 18, 2016 hearing involving the characteristics of the gun that killed Mrs. Rentfro. Nothing was brought out at trial by Mr. Bruntrager during cross-examination of the prosecution witnesses regarding the location of the ejector port on the right side of the gun, which would have provided powerful evidence that, had Mrs. Rentfro shot herself with her left hand,

that it is likely that no GSR would have been deposited on her left hand due to the location of the ejector port on this Glock weapon.  Based upon Cayton's testimony and the characteristics of this weapon, Bruntrager's testimony that all of the gases that produce GSR would have "blown into the wound" is incorrect and demonstrates a failure to conduct basic research on this critical issue.

On the BAC issue, the court overlooked an obvious and critical fact adduced during Mr. Cayton's testimony, that is supported by the Saperstein Forensic Science textbook, a well-known forensic science treatise, that a vitreous humor BAC reading is more scientifically reliable than a blood alcohol test because fermentation of blood occurs after a person expires that causes the alcohol level in the blood to rise.  As the relevant portion of the Saperstein treatise, that was introduced into evidence at the hearing as Exhibits 2 and 3, establishes:

> The collection of postmortem blood samples for alcohol determination requires added precautions as compared to collection from living subjects.  Ethyl alcohol may be generated in a deceased individual as a result of bacterial action.  Therefore, it is best to collect a number of blood samples from different body sites.  For example, blood may be removed from the heart and from the femoral (leg) and cubital (arm) veins.  Each sample should be placed in a clean, airtight container containing an anticoagulant and sodium fluoride preservative and should be refrigerated.  Blood-alcohol levels attributed solely to alcohol consumption should result in nearly similar results for all blood samples collected from the same person.  Alternatively, collection of vitreous humor and urine is recommended.  Vitreous humor and urine usually do not suffer from postmortem ethyl alcohol production to any significant extent.

14

(Exh. 3, p. 226).

Mr. Cayton further testified that, based on his review of the evidence in this case, that the blood sample taken from Mr. Rentfro at the autopsy at least twelve hours after her death was not refrigerated nor was a preservative added prior to its shipment to the crime lab.  As a result, Mr. Cayton testified that, in his opinion, the vitreous humor sample's reading of .183 was the far more accurate indicator of Mr. Rentfro's actual level of intoxication than the blood sample of .399 because this big discrepancy between the two tests likely resulted from fermentation of Mrs. Rentfro's blood sample before it was received and tested at the crime lab.

Trial counsel's failure to conduct basic research and consult with experts regarding the characteristics of the gun and the significance of the BAC discrepancy between the blood test and the vitreous humor BAC test presents a textbook case of ineffective assistance of counsel under *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2004).  The facts surrounding trial counsel's failure to investigate are also similar to the facts confronted by the Eighth Circuit in *Driscoll v. Delo*, 71 F.3d 701, 709 (8th Cir. 1995).  In finding trial counsel ineffective in failing to investigate and adequately inform himself regarding the significance of specific forensic tests conducted by the prosecution's blood-typing expert, the Eighth Circuit in *Driscoll* noted:  "[Because the blood match was] an issue of the utmost importance,…a reasonable defense lawyer would take some measures to

understand the laboratory tests performed and the inferences that one could logically draw from the results." *Id*.  As in this case, due to trial counsel's failure to investigate and present evidence to neutralize the prosecution's GSR evidence and the BAC testimony from Mary Case, the jury in *Driscoll* retired "with an inaccurate impression that the victim's blood might have been present on the defendant's knife." *Id*.

Mr. Bruntrager's failure to conduct basic research regarding the model of the handgun and consult with a ballistics expert, such as Mr. Cayton, was also clearly deficient.  This evidence regarding the ejector port location of the gun would have neutralized the incriminating aspects of the prosecution's experiment and their closing arguments that suggested that the absence of GSR on Mrs. Rentfro's hands strongly suggested she could not have possibly shot herself.  *See Sims v. Livesay*, 70 F.2d 1575, 1581 (6th Cir. 1992); *Draughon v. Dretke*, 427 F.3d 286, 297 (5th Cir. 2005) (finding counsel ineffective in failing to consult with and call ballistics experts).

This Court's conclusion that Mr. Bruntrager's performance was adequate in neutralizing the incriminating aspects of the prosecution's experts on the issue surrounding the GSR is also, ironically, in fundamental conflict with the findings of the Missouri Court of Appeals that were issued in the context of finding that petitioner's due process challenge to the improper closing arguments delivered by

16

the prosecution were not prejudicial.  (See Doc. 73, p. 16).  In this regard, the relevant passage that this Court quoted from the Court of Appeals found that petitioner was not prejudiced by this improper closing argument because of "substantial physical evidence and expert testimony…implicating [petitioner] as victim's killer."  (*Id.*).  In this regard, the Court of Appeals specifically noted the significance of the absence of GSR on the victim's left hand and Mr. Gerhardt's expert testimony that someone can fire a gun and have barium levels on his hands but only trace elements of antimony, which specifically alluded to the prosecution's expert testimony regarding the GSR test results of petitioner's hands. (*Id.*).

With regard to counsel's handing of the BAC evidence, the passage that this Court quoted from Mr. Bruntrager's testimony at the July 18 hearing removes any doubt that trial counsel's performance was deficient in failing to further investigate the variance between Mrs. Rentfro's vitreous BAC of .183 with her blood alcohol level of .399.  In this regard, Mr. Bruntrager testified that he chose to uncritically accept and, in fact, agreed with Dr. Case's testimony during her deposition that this variance could be explained by the fact that Mrs. Rentfro's body was able to metabolize the alcohol.[2]  As noted above, both Mr. Cayton's testimony and settled

---

[2] Dr. Case's deposition was introduced into evidence as Respondent's Exh. K.  Dr. Case did not give the same explanation for the BAC discrepancy that Mr. Bruntrager recalled in his recent testimony.  (See Resp. Exh. K, pp. 17-18).

principles of forensic science establish that both Mr. Bruntrager and Dr. Case were wrong because of the fermentation effect, which causes the BAC in a dead person's blood to increase after death while the ethyl alcohol level in vitreous sample remains constant. (See Exh. 3). This critical fact could have been easily discovered by Mr. Bruntrager with a minimal amount of research or expert consultation and his fundamental failure to conduct any investigation of this critical issue presents a textbook case of deficient performance under *Strickland* and *Hinton*.

Had this evidence regarding the ejector port location and the vitreous humor BAC evidence been effectively presented to the jury, it is clear that the prosecution could not have made these effective and misleading closing arguments that the negative GSR tests and the high BAC of Mrs. Rentfro removed any doubt that this was a murder instead of a self-inflicted wound. *See, e.g.*, *Starr v. Lockhart*, 23 F.3d 1280, 1292 (8th Cir. 1994) (finding prejudice where prosecution's closing argument "exacerbated the harm"). Even assuming for the sake of argument that the battle of experts between Englert and Kish ended in a draw, it is evident that the BAC evidence, in particular, was the crucial factor that convinced the jury to

---

Nevertheless, the evidence introduced at the July 18 hearing establishes that both Dr. Case and trial counsel were wrong in their belief that the discrepancy between the ethyl alcohol levels in the blood and vitreous samples was "insignificant." (*Id.* at p. 18).

wrongly convict petitioner of murder.    Reconsideration of these claims is warranted to rectify a clear miscarriage of justice.[3]

**C.    At A Minimum, This Court Should Alter Or Amend Its Order And Judgment To Grant Petitioner A COA On Claims 1, 2, And 4.**

Even if this Court ultimately decides not to change the result of its order and judgment, it should reconsider whether to grant a COA on the three ineffective assistance of counsel claims addressed in this motion.  Based upon the foregoing analysis and prior pleadings, a different court could decide that habeas relief is warranted on these three claims.

This conclusion is underscored by the course of the prior litigation in this case.  The court's failure to grant a COA is, in essence, a finding that these claims are frivolous.   This conclusion cannot be reconciled with this Court's previous decision that these ineffectiveness claims were substantial and had sufficient merit to warrant an evidentiary hearing after this Court found cause and prejudice under *Martinez*.  (See Doc. 47).

Because the standard for receiving a COA is modest and any doubt should be resolved in favor of the habeas petitioner, this Court should reevaluate this aspect of its order and issue a COA on petitioner's Claims 1, 2, and 4.  In similar

---

[3] In a post-trial letter to petitioner's sister, Mr. Bruntrager stated his belief, that he reiterated at the July hearing, that this case was the worst miscarriage of justice he has encountered in his legal career because petitioner's conviction was based upon "junk science."

circumstances, Judge Fleissig recently issued an order reversing an aspect of her judgment denying relief on a Missouri prisoner's *Brady*/*Giglio* claim in light of similar arguments made by the petitioner that the portion of the court's judgment denying a COA could not be reconciled with the fact that the district court found that the prisoner's *Brady* claim had sufficient merit to warrant two days of evidentiary hearings before the court.  *See Kennell v. Dormire*, No. 4:09-CV-407-AGF.  (Order of 05-26-16, Doc. 159).  At a minimum, the same result is warranted here.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, petitioner respectfully requests that this Court alter and amend its judgment and address the issues of law and fact raised herein and issue a new order and judgment granting petitioner a new trial. In the alternative, this Court should alter or amend its order to grant petitioner a COA on Claims 1, 2, and 4.

Respectfully submitted,

*/s/ Kent E. Gipson*
Kent E. Gipson, #34524
Law Office of Kent Gipson, LLC
121 East Gregory Boulevard
Kansas City, Missouri 64114
816-363-4400 • Fax: 816-363-4300
kent.gipson@kentgipsonlaw.com

*COUNSEL FOR PETITIONER*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of October, 2016, the foregoing was filed via the CMECF system, which sends notification to all counsel of record.

*/s/ Kent E. Gipson*
Counsel for Petitioner
